RICHARD PETERSEN, 41012
Petersen & Petersen
PATRICIA LITTLEFIELD, SBN 132686
Law Office of Patricia Littlefield
444 North School Street
Ukiah, CA  95482
Telephone:    (707) 468-5184
Facsimile:    (707) 462-0472
Email:        petersenlaw@att.net

Attorneys for Petitioner
Florencio Torres Rodriguez

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLORENCIO TORRES RODRIGUEZ,<br><br>   Petitioner,<br><br>   vs.<br><br>,<br><br>RICHARD SUBIO,<br><br>   Respondent. | No. C 07-04796 WHA<br><br>**PETITIONER'S TRAVERSE TO THE ANSWER** |

   COMES NOW PETITIONER RODRIGUEZ, AND TRAVERSES THE ANSWER TO THE PETITION FOR WRIT OF HABEAS CORPUS AS HERE SET FORTH:

   Rodriguez realleges all facts, assertions, and legal grounds for relief set forth in the petition, and enters for his admissions and denials the following:

   1.  Rodriguez denies that he is lawfully in the custody of the California Department of Corrections and Rehabilitation, and otherwise admits the allegations contained in heading I, CUSTODY, of the answer at pages 1-2.

   2.  Rodriguez admits that the occurrences set forth in heading II, STATE PROCEDURAL HISTORY, of the answer at page 2 took place.

1    3. Rodriguez admits the allegation contained in heading III, FEDERAL
2 PROCEDURAL HISTORY, of the answer at page 2.
3    4. Rodriguez denies the allegations in lines 24 through 26 ½ of heading IV,
4 CLAIMS FOR RELIEF, in the answer at page 2, and denies the further allegations set
5 forth in that heading at page 3 of the answer.
6    5. Rodriguez admits the allegations contained in heading V, EXHAUSTION, of
7 the answer at page 3, in heading VI, AVAILABLE TRANSCRIPT AND RECORD at
8 pages 3-4 of the Answer.
9    6. Rodriguez denies the allegations contained in headings VII, EXPRESS AND
10 IMPLIED FACTUAL FINDINGS, and VIII, GENERAL DENIAL, at page 4 of the
11 answer.
12    WHEREFORE, Rodriguez respectfully requests that the petition for writ of habeas
13 corpus be granted, and that the Court remand the case to state court for further
14 proceedings in accordance with its decision.
15    Dated: February 25, 2008
16                                    Respectfully submitted,
17
18                                    /s/    Richard Petersen
19                                    Attorney for Petitioner
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Respondent Subio argues that Claim I of Rodriguez's petition, a due process challenge to trial court venue, is procedurally defaulted for lack of a contemporaneous objection. Answer, pp. 5-7. Rodriguez showed in the memorandum of points and authorities in support of his petition at page 26 that the waiver rule underlying Subio's claim of procedural default is not an adequate and independent state ground because it is not consistently applied and had never been applied in a case such as his. Subio is also incorrect in countering Rodriguez's insufficiency of the evidence claim with an argument that substantial evidence supports the conviction on count four. Finally, contrary to Subio's argument, Rodriguez was afforded ineffective assistance of counsel. Accordingly, the Court should grant Rodriguez relief.

### ARGUMENT

#### I.

**RODRIGUEZ'S DUE PROCESS CHALLENGE TO TRIAL COURT VENUE IS NOT PROCEDURALLY DEFAULTED BECAUSE THE CONTEMPORANEOUS OBJECTION RULE DOES NOT CONSTITUTE AN ADEQUATE AND INDEPENDENT STATE GROUND.**

Rodriguez argued in his petition that the contemporaneous objection rule to venue under the circumstances of his case was inadequate and not consistently applied. Subio cursorily asserts that Rodriguez has not so demonstrated, citing *Gray v. Netherland,* 518 U.S. 152, 161-62 (1996). Answer, p. 7. Subio not only ignores — but fails in any way to rebut — the two bases upon which Rodriguez did demonstrate that the contemporaneous objection rule is not consistently applied, and therefore cannot constitute a procedural default of this claim. Petition, p. 26. Since it is Subio's burden to show that the procedural bar is adequate or consistently applied, and he has utterly failed to do so, the State's argument that the claim is procedurally barred fails. Subio also has failed to

counter Rodriguez's argument that the venue provisions and his due process rights were violated, requiring that his convictions be vacated.

As Subio acknowledged in citing *Bennett v. Mueller,* 322 F.3d 573, 585 (9th Cir. 2003), the burden is on the State to establish that the procedural default rule at issue here is adequate or consistently applied. Rodriguez showed in the petition that the procedural default rule had never been applied to the circumstances existent in his case — i.e., the failure of the prosecuting county's district attorney to obtain the written permission of the non-prosecuting county's district attorney to try the latter's charges in the prosecuting county — for the provision so requiring had been recently added to the statute and there was no reported case dealing with it or the need for an objection in the face of non-compliance. As Rodriguez asserted, citing *Bennett v. Mueller, id.* at 583:

> To be deemed adequate, the state law ground for decision must be *well-established and consistently applied* … at the time it was applied by the state court. [Citation.]

A necessity to object that had not previously been established at the time of Rodriguez's trial plainly does not satisfy this requirement.

Rodriguez also cited California case law indicating that the failure to contemporaneously object does not constitute a waiver where the issue on appeal is solely a matter of law, requiring no reference to a factual record developed below. *See* Petition, p. 26. Such is Rodriguez's case. The issue involved solely a question of law — whether venue for the Lake County charges was proper in Santa Clara County when the written permission of the Lake County District Attorney was not obtained. That this exception exists is further evidence that the contemporaneous objection rule is not consistently applied in cases like Rodriguez's. Furthermore, the requirement of an objection by the defendant under the circumstances existing in Rodriguez's case is absurd, for it places on the defendant the requirement of enforcing statutorily mandated duties between prosecutors from different counties intended to preserve proper venue and independent prosecutorial discretion and authority.

1    No Ninth Circuit case has recognized a procedural default based on the
2 defendant's failure to contemporaneously object to venue on the basis that the non-trying
3 county's prosecutor gave no written permission for trial of the case in a different county.
4 *See William v. LaMarque,* __ F.Supp. 2d __, 2007 WL 2853272, *7 (N.D.Cal. 2007).
5 Subio therefore has not born his burden of showing that the contemporaneous objection
6 rule is well-established and consistently applied, and his procedural default argument
7 fails.
8    Subio has not argued that relief is not warranted on the merits of Rodriguez's due
9 process claim.  He should thus be deemed to concede that it is.  The Court should
10 accordingly grant the writ on this ground and remand the cause to state court with
11 directions to vacate the conviction in count four, and dismiss it.

13                                    II.
14   THERE IS INSUFFICIENT EVIDENCE TO SUPPORT THE
     CONVICTION OF COUNT FOUR.
15
16    Subio at length quotes testimony and analysis from the state court opinion that
17 only supports Rodriguez's argument that the evidence is insufficient to support his
18 conviction of count four, which the prosecutor and Subio argued occurred when
19 Rodriguez touched his penis to Maile's lip or mouth while camping in a tent in Lake
20 County between the dates of December 1, 2000, and June 30, 2001.  Answer, pp. 10-12.
21    Maile quite clearly said in her taped statement to the investigating officer, which
22 was played to the jury, that this incident took place in "the bedroom," — not in a tent
23 while camping outside the house in Lake County.  That statement was taken at a time
24 when Maile's memory was much clearer than it was during her trial testimony.  In fact,
25 during her trial testimony at pages 61-155 of Volume 1 of the Reporter's Transcript of
26 trial (R.T.), Maile remembered very little of what she had told the investigator or what
27 had happened; she appeared to remember a great deal of what she alleged only after the
28 prosecutor showed her the transcript of her taped statement to refresh Maile's

1  recollection. *See e.g., id.* at pp. 66, 69-82. Oddly, when Maile testified to certain things
2  during cross-examination and defense counsel pointed out to her she had said something
3  quite different in the investigator interview or at another court hearing, she would not
4  remember that she had previously said that. *See, e.g., id.* at pp. 119-120, 126-127, 129-
5  130, 131.
6      Thus, in the foregoing context at trial Maile did testify that the facts underlying
7  count four took place in a tent on the deck of her grandparents' house while "camping."
8  R.T. pp. 94, 150. This, however, cannot be squared with Maile's earlier statement to the
9  investigator that count four took place "in the bedroom." Nor is this a credibility
10 determination between two witnesses who have given very different renditions of a
11 particular incident to which almost absolute deference is to be given. *See Bruce v.
12 Terhune,* 376 F.3d 950, 957 (9th Cir. 2004.) This is the same witness, with virtually no
13 memory at trial, who said different things at different times and whose statements are
14 internally inconsistent. The argument that this touching occurred while Maile was
15 camping in a tent in Lake County is simply defeated by Maile's clear and immediate
16 statement to the detective that this particular incident occurred in "the bedroom."
17     The Court of Appeal's conclusion , see Answer p. 10, that Maile's reference to the
18 incident underlying count four as taking place in the bedroom "does not mean that Ma
19 said the offense took place in San Jose rather than Lake County" is an unreasonable
20 application of *Jackson v. Virginia,* 443 U.S. 307 (1979). Given Maile's lack of memory
21 at trial, her overall confusion, and her quick and clear inconsistent statement that this
22 incident took place in the bedroom and not in the tent, no rational trier of fact could have
23 found Rodriguez guilty of that count beyond a reasonable doubt that. This is underscored
24 by the patent unlikelihood that Rodriguez's penis touched Maile's mouth when she
25 described it as "something touch[ed] my mouth," "I *think* it was his penis," and "I
26 whooshed it away. Like it felt like a fly landed on you, tickles or whatever, I just …
27 swished it off." R.T. Vol. I, p. 94. Thus, the evidence is insufficient to support
28

1 Rodriguez's conviction of count four, in violation of the due process clause of the United
2 States Constitution.

### III.

#### RODRIGUEZ HAS ESTABLISHED THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT.

Subio argues that the state courts' decisions to deny Rodriguez's motion after trial to supply phone records requested by him during trial, but not received because trial counsel requested the wrong dates, was a reasonable application of *Strickland* v. *Washington,* 466 U.S. 668 (1984). Answer, pp. 17-18.[1] Subio contends that the courts' conclusions that any impeachment supported by those phone records was simply cumulative, because Maile's mother, Melanie F., was resoundingly impeached during trial. Subio further suggests that Rodriguez can show no prejudice because — had Melanie F.'s testimony been thrown out entirely, the testimony of Maile, Gabrielle, and Shantyana would have yielded convictions on all counts, so there is no reasonable likelihood the result would have been different. *Id*.

For the reasons set forth here and in the petition, pp. 29-30, Subio is wrong. First, had the correct phone records been obtained at trial by counsel they would have constituted direct evidence that Melanie F. was increasingly vindictive and hysterical about Rodriguez's pending marriage, and after all the time she had failed to relay to the police what Maile had told her, she suddenly decided to do so. Crucially, it would also have bolstered Rodriguez's own testimony that this was the case. Rodriguez's credibility was absolutely essential to his defense. As the evidence at trial stood, the jury did not believe Rodriguez's denials that he sexually touched Melanie. But had his credibility been bolstered by records of calls from Melanie F. to Rodriguez, and had the jury had a

---

[1] At page 14, note 3 of the Answer, Subio indicates that he never received a copy of the sealed in camera transcript regarding the phone records although counsel for Rodriguez did. Counsel here represents that everything of substance at that in camera hearing was set out in detail on the record, *see* Answer at p. 13. Rodriguez will provide a copy of the sealed transcript to the Court and Subio should the Court so order.

1  true picture of the depth of Melanie F.'s vindictiveness particularly in the time leading up
2  to her reporting Maile's allegations against Rodriguez, the jury would have heard a true
3  account of the depth of Melanie F.'s reaction to being ignored or rejected by Rodriguez.
4  In turn, the jury could have understood that Melanie F. indeed had the desire, and the
5  emotional and authoritative power to influence Maile and cause her to accuse Rodriguez
6  of sexual abuse.  The existence of such a phenomenon is widely recognized:

> See generally Jacqueline M. Beckett, *The True Value of the Confrontation Clause:  A Study of Child Sex Abuse Trials*, 82 Geo. L.J. 1605, 1635-35 (1994) ("[A]lmost all situations involving child sex abuse accusations promote the reward-seeking behavior that leads to lying.  These allegations are most common when parents involved in marital disputes accuse their spouses of abusing their children.  In these situations, the child may be willing to exchange her testimony for the love and attention that she badly craves."); Brian L. Schwalb, *Child Abuse Trials and the Confrontation of Traumatized Witnesses*, 26 Harv. C.R.- C.L.L. Rev. 185, 185 n.4, 185-186 (1991) (discussing studies showing false claims of sexual abuse motivated by vindictive spouses, nothing that "false allegations of abuse have [ ] become disturbingly common").

*Lindstadt v. Keane,* 239 F.3d 191, 203 n.2 (2d Cir. 2001).

The bolstering of Rodriguez's testimony, and the jury's true understanding of the power of a vindictive woman who was not a good mother, and who had otherwise been gravely impeached, was reasonably likely to have led the jury to a different result. Accordingly, the Court should grant relief on this ground as well.

## CONCLUSION

For the reasons set forth above and in the petition, the Court should grant the writ and order the case returned to state court for proceedings in accordance with its decision.

Dated: February 25, 2008

                    Respectfully submitted,

                    */s/     Richard Petersen*

                    RICHARD PETERSEN
                    Attorney for Petitioner Rodriguez