IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FLORENCIO TORRES RODRIGUEZ,

    Petitioner,

v.

RICHARD SUBIO,

    Respondent.

No. C 07-04796 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Florencio Torres Rodriguez seeks federal habeas relief pursuant to 28 U.S.C. 2254. A state jury convicted him of four counts of lewd and lascivious conduct on a child under the age of fourteen. The jury also found true the substantial sexual conduct allegations relating to two of the counts. Petitioner was sentenced to ten years in state prison. After exhausting his state remedies, petitioner filed the instant petition for writ of habeas corpus. He makes three claims in support thereof: (i) the state court arbitrarily deprived him of the due process right to be tried in a county where Counts Three and Four allegedly occurred; (ii) there was insufficient evidence to support his conviction on Count Four; and (iii) he had ineffective assistance of counsel. For the reasons stated below, the petition for writ of habeas corpus is **DENIED**.

## STATEMENT

Until mid-to-late December 2000, petitioner, his wife Melanie, and Melanie's daughter M. from a previous relationship lived in an apartment together in San Jose. M. was ten years old at the time. Sometime after Halloween of that year, petitioner molested M. as she was

falling asleep in front of the television. M. felt petitioner's hand on her buttocks, moving toward her vagina. Because she was afraid and did not know what to do, she stayed still. Petitioner touched her breasts under her clothes with his mouth and put his penis inside her vagina. She recalled feeling "wet stuff" coming out and onto her. The touching stopped when M. made herself "fall" off the couch so petitioner "would leave [her] alone" (Resp. Exh. E at 74).

At some point before the family moved to Kelseyville in Lake County, M. believed that she told her mother about the incident. Melanie confronted petitioner but did not report anything to law enforcement officials. Petitioner later testified at trial that Melanie had never confronted him about M.'s allegations.

In late 2000 or early 2001, the family moved to live with petitioner's parents in Kelseyville. There, petitioner and M. camped out in a tent outside the house. M. fell asleep but woke up when she felt what she thought was petitioner's penis touching her mouth. She said that "it felt like a fly landed on you, tickles or whatever." She "swished it off" and moved away from petitioner (Resp. Exh. E at 94) . Petitioner then touched her vagina with his hand and his penis. The touching stopped when she moved further away again from petitioner.[1]

Sometime after Mother's Day in 2001, Melanie moved in with her aunt in Lucerne, Lake County. There was conflicting testimony from Melanie, M., the brother of M., and petitioner as to with whom M. resided at that point. Either Melanie took M. and her brother to live with Melanie at the aunt's house, or Melanie and petitioner alternated taking care of the two children. In June 2001, Melanie moved back to San Jose with M. and M.'s brother. Petitioner remained in Kelseyville.

In July 2002, M. saw a television report of a girl in Los Angeles who had been kidnaped, sexually abused, and murdered. M. became upset and told her mother that she had been sexually abused. Melanie decided to notify the police. San Jose Officer Rocky Zanotto

---

[1] Petitioner disputes where this incident took place. Petitioner states that M. "quite clearly said in her taped statement to the investigating officer, which was played to the jury, that this incident took place in 'the bedroom' — not in a tent while camping outside the house in Lake City" (Traverse 5). According to petitioner, the inconsistency showed how M.'s memory was not to be trusted.

1  responded to the report of child molestation. He talked to M. about the incidents.
2  Although police officer Louis Lucero tried to schedule an interview with M. in July,
3  the interview did not take place until November 2002. Melanie appeared to not be cooperating
4  with the investigation. When the interview with M. finally occurred, Officer Lucero taped it.
5  The tape was later played for the jury (and no issue was raised with respect to the tape).

6       In December 2002, medical examiner Marylou Ritter examined M. and found no
7  evidence of penetrating trauma. It was, however, "not surprising" to the examiner that she did
8  not see any evidence of trauma. Ms. Ritter testified that "[t]he healing generally occurs in
9  certainly three weeks" and, "when [girls] enter puberty . . . the hormone estrogen, which is the
10 driving force of puberty in girls, changes the appearance of the hymen fairly dramatically"
11 (Resp. Exh. D at 46–48).

12      In September 2003, the Santa Clara County District Attorney charged petitioner with
13 four counts of lewd and lascivious conduct on a child under the age of fourteen in violation of
14 Cal. Penal Code § 288(a). Counts One and Two were alleged to have occurred between
15 July 1, 2000, and December 31, 2000, in Santa Clara County. Counts Three and Four were
16 alleged to have taken place between December 1, 2000, and June 30, 2001, in Lake County.
17 Petitioner was tried on all four counts in Santa Clara County. Trial commenced in
18 February 2004. Numerous witnesses testified, including M., Officer Zanotto, Officer Lucero,
19 Melanie, and petitioner.

20      When Melanie testified, it was revealed that she had convictions for misdemeanor petty
21 theft, misdemeanor embezzlement, and misdemeanor petty theft with a prior. Melanie testified
22 that M. told her in July 2002 that petitioner had sexually abused M. (Resp. Exh. D at 9–10).
23 District attorney investigator Carl Lewis, an expert on Child Abuse Accommodation Syndrome,
24 also testified. Among other things, he discussed how abused children did not have sufficient
25 coping mechanisms and typically delayed reporting (*id.* at 80–90).

26      Petitioner took the stand in his own defense. Besides denying the acts of molestation,
27 he portrayed Melanie as an unreliable witness. They had a rocky and abusive relationship.
28 Petitioner described the telephone conversation he had with Melanie sometime between

United States District Court
For the Northern District of California

3

1  December 2001 and March 2002. She had just been subpoenaed to testify in a previous
2  domestic violence of petitioner's that took place in Sonoma County. She called petitioner and
3  asked petitioner what she should do. She allegedly complained about driving up to the
4  courthouse and asked petitioner to plea bargain so she would not have to make the drive.
5  When petitioner asked her to stop calling him, Melanie responded, "Watch what I'll do"
6  (Resp. Exh. E at 403–07).

7  The jury found petitioner guilty of all counts. In April 2004, new counsel substituted in
8  for sentencing and other proceedings. The trial court denied petitioner's motion for new trial,
9  which was based primarily on the grounds that he received ineffective assistance of counsel at
10  trial. Petitioner was sentenced to ten years in prison. He appealed his conviction on the same
11  grounds discussed herein. In April 2006, the California Court of Appeal affirmed the trial
12  courts' decision. Shortly thereafter, the California Supreme Court denied his petition for
13  review. Petitioner properly exhausted his state remedies. In September 2007, he filed the
14  instant petition for writ of habeas corpus pursuant to 28 U.S.C. 2254.

**ANALYSIS**

16  Under the Antiterrorism and Effective Death Penalty Act, habeas relief can be granted
17  only if the state court decision is "contrary to, or involved an unreasonable application of,
18  clearly established Federal law, as determined by the Supreme Court of the United States," or is
19  "based on an unreasonable determination of the facts in light of the evidence presented in the
20  State Court proceeding." 28 U.S.C. 2254(d). Petitioner asserts that his case falls squarely
21  within AEDPA and that the writ should be granted in light of the state courts' decisions.

22  **1.   VENUE.**

23  Petitioner contends that the convictions for Counts Three and Four violated his federal
24  due process rights because of improper venue. He was charged with two counts of lewd and
25  lascivious acts that occurred in Santa Clara County in late 2000 and two counts that occurred
26  between December 1, 2000, and June 30, 2001 in Lake County. Petitioner was tried in Santa
27  Clara County on all four counts.

4

1    According to Cal. Penal Code § 784.7 (a) (emphasis added):

> When more than one violation of Section 220, except assault with intent to commit mayhem, 261, 262, 264.1, 269, 286, 288, *288a*, 288.5, or 289 occurs in more than one jurisdictional territory, the jurisdiction of any of those offenses, and for any offenses properly joinable with that offense, is in any jurisdiction where at least one of the offenses occurred, subject to a hearing, pursuant to Section 954, within the jurisdiction of the proposed trial. At the Section 954 hearing, the prosecution shall present evidence in writing that all district attorneys in counties with jurisdiction of the offenses agree to the venue. Charged offenses from jurisdictions where there is no written agreement from the district attorney shall be returned to that jurisdiction.

Petitioner points to the fact that nothing in the record indicated that the Lake County district attorney agreed in writing to have the Lake County counts tried elsewhere. No hearings or documents indicated any such agreement. Trial of the Lake County charges in Santa Clara County, petitioner argues, was therefore impermissible. This arbitrary application of state law affected petitioner's liberty interests and therefore implicated his federal due process rights, he claims.

The California Court of Appeal rejected petitioner's argument because petitioner had failed to make a contemporaneous objection to the improper venue. The state appellate court stated (Pet. Exh. A at 9):

> Although there is nothing in the record indicating that a section 954 hearing was held, there is also nothing in the record indicating that defendant ever objected to the lack of a writing from the district attorney of Lake County agreeing to venue in Santa Clara County. The commencement of a proceeding in an improper venue is a defect that can be remedied easily if the issue is timely raised, and a defendant's failure to raise a timely objection to venue will often reflect a strategic decision on the part of the defense. (*People v. Simon* (2001) 25 Cal. 4th 1082, 1104, fn. 15 (*Simon*).) Defendant contends that, since section 784.7 was amended in 2002, after *Simon* was decided, he was not required to raise an objection prior to trial to the lack of a writing from the district attorney of Lake County agreeing to venue in Santa Clara County, trial on counts 3 and 4 would not have occurred in Santa Clara County unless such a writing was presented at a section 954 hearing. Our Supreme Court has stated that, "taking into account the nature and purpose of the venue safeguard and the substantial state interest in protecting the integrity of the process from improper 'sandbagging' by a defendant, we conclude that a defendant who fails to raise a timely objection to venue in a felony proceeding forfeits the right to object to venue — either at trial or on appeal. [Citations.]" (*Simon, supra*,

5

> 25 Cal. 4th at p. 1104, fn. omitted.) Accordingly, we find in this case that defendant has forfeited his right to object to the trial in Santa Clara County of the offenses in counts 3 and 4 that occurred in Lake County.

This order agrees with the California Court of Appeal and finds that petitioner's venue argument is unavailing.

It is well-established that "state courts are the ultimate expositors of state law . . . [W]e are bound by their constructions except in extreme circumstances." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Petitioner discussed two exceptions to this general rule. One exception was when a state court's "reinterpretation of a criminal statute was so novel as to be 'unforeseeable' and therefore deprived the defendants of fair notice of the possible criminality of their acts at the time they were committed." *Id.* at 691 n. 10. The Supreme Court stated another exception: "On rare occasions the Court has re-examined a state-court interpretation of state law when it appears to be an 'obvious subterfuge to evade consideration of a federal issue.'" *Id.* at 691 n.11. Petitioner argues that the California appellate court did just that — it acted in an arbitrary manner and intentionally sidestepped the deprivation of petitioner's federal due process right to proper venue (thereby costing petitioner four years' worth of liberty). According to the mandatory language of Cal. Penal Code § 784.7 (a) (emphasis added), "the prosecution *shall* present evidence in writing that all district attorneys in counties with jurisdiction of the offenses agree to the venue. Charged offenses from jurisdictions where there is no written agreement from the district attorney *shall* be returned to that jurisdiction."[2]

Petitioner's argument is flawed. *First*, he provides no evidence that the state court engaged in obvious subterfuge to evade consideration of a federal issue. The state court specifically and thoroughly considered the "venue safeguard and the substantial state interest in protecting the integrity of the process from improper 'sandbagging' by a defendant" to dispose of this argument. Moreover, the state court did not assert that a written agreement was not

---

[2] Unless indicated otherwise, internal citations are omitted from all cites.

6

1  mandatory. Rather, it held that, had petitioner raised a timely objection, trial on these two
2  counts would have occurred elsewhere. There was no such timely objection, however,
3  so petitioner forfeited his venue argument. Without this being a rare occasion where the state
4  court engaged in subterfuge to evade consideration of a federal issue, this order will not
5  second-guess the state court's reasoned construction.

6       *Second*, the state court did not act arbitrarily or reinterpret the criminal statute in a novel
7  manner. Case law cited by the state appellate court had long dictated that petitioner waived the
8  right to assert procedural problems in the absence of a timely objection. *See People v. Laster*,
9  18 Cal. App. 3d 381, 387 (1971) (claim that venue should have been changed in light of
10 prejudicial pretrial publicity is forfeited if not timely asserted); *People v. Wilson*, 60 Cal. 2d
11 139, 146–48 (1963) (constitutional and statutory right to speedy trial deemed waived if not
12 asserted in timely fashion). Furthermore, as discussed earlier, the state court did *not* hold that a
13 district attorney's written approval was not mandatory; it merely held that the objection had to
14 be raised in a timely manner. Petitioner's contention that the contemporaneous-objection rule
15 was inconsistently applied is therefore unpersuasive. *See Bennett v. Mueller*, 322 F.3d 573, 583
16 (9th Cir. 2003) ("To be deemed adequate, the state law ground for decision must be
17 well-established and consistently applied").[3]

18      *Third*, petitioner may obtain review of his constitutional claims if he can establish
19 "cause and prejudice" or if he falls within the narrow class of cases implicating a fundamental
20 miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298, 314–15 (1995). Petitioner has offered no
21 evidence whatsoever to show that the state court decision resulted in prejudice or a fundamental
22 miscarriage of justice. All he alleges is that Counts Three and Four should have been tried in

---

[3] Petitioner cites *Williams v. Lamarque*, 2007 WL 2852372, *6–7 (N.D. Cal. 2007) (Hamilton, J.), for the proposition that no Ninth Circuit decision has recognized a procedural default based on the defendant's failure to contemporaneously object to venue because the non-trying county's prosecutor gave no written permission for trial of the case in a different county. This decision in inapposite. In *Williams*, the district court explained that the respondent had adequately pled the existence of an independent and adequate procedural bar. The petitioner, however, failed to demonstrate the inadequacy of the state procedural bar, for instance by providing citations showing inconsistent application. "That California's contemporaneous objection rule operates as a procedural bar has been recognized by the Ninth Circuit." *Id.* at *6. The district court concluded that the petitioner's claim was barred by the procedural default but it nonetheless considered the merits of the claim as an alternative ground for its holding.

7

1  Lake County. Nothing in the record indicates that a different venue would have resulted in a
2  more favorable outcome for petitioner. This order rejects petitioner's venue argument because
3  it constitutes sandbagging by petitioner and because petitioner has not shown that trial in
4  Lake County would have changed the outcome.

     **2.    SUFFICIENCY OF THE EVIDENCE.**

Petitioner claims that his conviction on Count Four was not supported by sufficient evidence. Under clearly established federal law, as determined by the Supreme Court, "the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. But this inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.' Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (emphasis in original).

A federal court evaluating the evidence under *Jackson v. Virginia* should take into consideration all of the evidence presented at trial. *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006). "The reviewing court must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming that the jury resolved all conflicts in a manner that supports the verdict. 'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995). A jury's credibility determinations are therefore entitled to near-total deference under *Jackson*. *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).

Here, Count Four charged a violation of Cal. Penal Code 288(a), which provides:

> Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part I, upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony

8

>and shall be punished by imprisonment in the state prison for three,
>six, or eight years.

This count related to the penis-to-mouth contact that occurred when petitioner and M. were camping outside petitioner's parents' house in Kelseyville.

Petitioner argues, "In light of the record of the case in its entirety, and the requirement that evidence of each element of the offense must be substantial, the evidence is insufficient to support the conviction in count four" (Pet. 29).  He says that the trial court improperly denied petitioner's insufficient evidence claim by relying on Officer Lucero's testimony about his interview with M.  The officer's testimony, however, was fraught with problems, says petitioner.  It seemed to indicate that the incident in Count Four did not occur in Lake County or in the time period charged.  During the interview with Officer Lucero, M. was not under oath and was speaking with an authority figure.  Officer Lucero admitted in his testimony that he generally did not confront a child with inconsistencies in the child's statements or the statements of other witnesses.  Moreover, the officer conceded that he may have asked leading or suggestive questions.  Finally, M.'s own description of an object touching her lips — like a fly that tickled — did not match up with a real penis touching her lips.  Her testimony, petitioner contends, was generally inconsistent and unreliable, especially given where she thought the incident took place.

This order disagrees with petitioner's characterization of the law regarding sufficiency of the evidence.  It is not a federal court's duty to weigh the credibility of a testifying witness.  Nor should a federal court ask whether or not the evidence established guilt beyond a reasonable doubt.  Instead, when reviewing whether or not the evidence was sufficient to support a criminal conviction, a federal court must ask if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  This order finds that a rational trier of fact could have done so, especially when viewing the evidence in the light most favorable to the prosecution.

The jury was informed that Count Four related to the penis-to-mouth contact that occurred in Kelseyville.  M. testified about the incident in court.  The jury also heard M.'s recorded statement reporting that petitioner put his penis to her mouth.  A transcript of the

1 interview between Officer Lucero and M. provided the following ( Resp. Exh. A at 169):

> Q: . . . On the second time, in the camp, in the tent, did uh, did you feel that same nasty stuff again? Did Frank ever do anything else to you in Kelseyville?
>
> A: Yeah.
>
> Q: What else did he do?
>
> A: He tried to put his dinky in my mouth.
>
> Q: And what happened?
>
> A: I moved away.
>
> Q: Did he manage to put it in your mouth?
>
> A: No.
>
> Q: Did it get near your mouth? Where did it touch you at?
>
> A: Right here.
>
> Q: How many times did he do that, [M.]?
>
> A: Just once, that one time.

The record showed that there was enough evidence such that a rational trier of fact could have found beyond a reasonable doubt that petitioner engaged in lewd and lascivious acts with M. as they camped out together in Kelseyville. The state court's denial of petitioner's argument was appropriate; it was not contrary to or involved an unreasonable application of *Jackson*. Nor was it based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

**3.    EFFECTIVENESS OF TRIAL COUNSEL.**

*Strickland v. Washington*, 466 U.S. 668 (1984), is considered by the Ninth Circuit to be clearly established federal law for analyzing ineffective assistance of counsel claims. *Wilson v. Henry*, 185 F.3d 986, 988 (9th Cir. 1999). *Strickland* sets forth a two-step standard that must be satisfied in order to prove ineffective assistance of counsel. *Strickland*, 466 U.S. at 687-88.

*First*, petitioner must show that counsel's representation fell below an objective standard of reasonableness. *Id*. at 668. The question is not what counsel could have done but whether the choices made by counsel were reasonable. *Babbitt v. Calderon*, 151 F.3d 1170, 1173

10

1  (9th Cir. 1998). Judicial scrutiny of counsel's performance must be highly deferential, and a
2  court must strongly presume that counsel's actions falls within the wide range of reasonable
3  assistance. *Strickland*, 466 U.S. at 688.

4    *Second*, petitioner must show that counsel's performance prejudiced petitioner and
5  deprived petitioner of a fair trial and reliable results. The petitioner must prove that, but for
6  counsel's errors, there is a reasonable probability that the result of the proceeding would have
7  been different. *Id*. at 694. If the state's case were weak, there is a greater likelihood of a
8  reasonable probability that the trial would have been different. *Johnson v. Baldwin*, 114 F.3d
9  835, 839–40 (9th Cir. 1997).

10   Here, petitioner alleges ineffective assistance of counsel — his trial counsel's deficient
11 performance resulted in the refusal of the trial court to release phone records crucial to the
12 defense's attempt to obtain a new trial. Before trial, petitioner requested phone records from
13 phones used by Melanie. He wanted to show that Melanie was not as afraid of petitioner as she
14 pretended to be and had frequently contacted him up to July 21, 2002, the date when she
15 reported the sexual abuse of her daughter. The timing was crucial because petitioner remarried
16 on July 22, 2002, the day after the report was made. According to petitioner, Melanie wanted to
17 stop the remarriage. The trial court granted the request for phone records. The phone records
18 supplied, however, were for the wrong time periods. Trial counsel neglected to correct the
19 mistake. Petitioner was convicted.

20   Petitioner then retained new counsel for his motion for new trial. Petitioner's new
21 attorney requested that the phone records covering the correct time period be released to
22 petitioner. But because it felt that Melanie had been extensively impeached, the trial court
23 concluded that evidence of the phone calls would not have changed the outcome of the trial.
24 Petitioner now argues that the phone records constituted direct objective evidence that Melanie
25 was lying under oath, and petitioner's original trial counsel performed deficiently because it
26 failed to obtain the correct phone records. Accordingly, petitioner argues, he was unable to
27 show the full extent of Melanie's vindictiveness. This evidence would have bolstered his own
28 credibility and detracted from Melanie's, says petitioner.

11

This order finds no merit in petitioner's ineffective assistance of counsel claim. Under the *Strickland* standard, petitioner must show that trial counsel acted unreasonably and that counsel's performance prejudiced petitioner. Here, whether or not trial counsel acted unreasonably is moot because petitioner fails to show that he was prejudiced. Even if petitioner could have gotten his hands on the phone records, there was no reasonable probability that the result of the proceeding would have been different.

*First*, trial counsel had thoroughly attacked Melanie's credibility during cross-examination. As a matter of fact, when new defense counsel requested the phone records, the trial court denied the request and stated, "I think that the argument that's made is that this evidence would be circumstantial evidence of a motive to fabricate. But as I indicated to [trial counsel], I think that that argument was, in fact, made and made rather well by [trial counsel]" (Resp. Exh. E at 625). The California Court of Appeal quoted the trial court (Pet. Exh. A at 14–15):

> With regard to, essentially, a lot of the arguments that are made by the defense deal with the jealousy of [Melanie], the fulcrum date regarding the allegations, and the allegations that [Melanie] was controlling, calling the shots, as you mentioned. And they sort of, in my view, can be sort of lumped together in the sense that they are attacking [Melanie's] character and credibility . . .   I would have to say that the character and credibility of [Melanie] was destroyed as effectively as I have ever seen any witness'[s] credibility and character destroyed in my entire career . . . I doubt that having additional information, arguing that in addition to all these other things that you've heard, keep in mind the significance of the date of the allegations, that that would have, in any way — I don't think there's any showing that that would have caused the jury to reach a different result.

The state appellate court agreed with the trial court and concluded that "the requested evidence was not such as to render a different result probable on retrial" (*id.* at 15). *Second*, Melanie was already impeached with her convictions for misdemeanor petty theft, misdemeanor embezzlement, and misdemeanor petty theft with a prior. *Third*, it is hard to see how the phone records could have added to the impeachment evidence against Melanie. Phone records would have merely shown the time, frequency, and duration of phone calls made between Melanie and

12

petitioner. They would not have revealed the substance of their conversations. Petitioner had already testified that, in earlier phone conversations, Melanie threatened, "Watch what I'll do." This order finds that no prejudice resulted from the undisclosed phone records.

## CONCLUSION

This order finds that the trial court exercised proper venue, that there was sufficient evidence to support a conviction on Count Four, and that there was no ineffective assistance of counsel. The petition for writ of habeas corpus is therefore **DENIED**.

**IT IS SO ORDERED.**

Dated: February 27, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE